**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **RICHARD EDGE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 06-0710-WS-C** |
| | ) |
| **JERRY FERRELL, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 52). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 53, 54, 56, 58, 59, 63), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for summary judgment is due to be granted.

**BACKGROUND**

According to the amended complaint, the plaintiff was at all relevant times an inmate at Fountain Correctional Facility, where defendant Jerry Ferrell is warden. Defendant Donnie Nunley was employed by the Alabama Department of Corrections as an investigator. While at Fountain in early 2004, the plaintiff became romantically involved with Tina Jay, a nurse at the facility. When Ferrell learned of the relationship, Jay lost her employment. Ferrell also prohibited Jay from visiting the plaintiff in prison. In addition, Ferrell repeatedly denied the plaintiff and Jay an opportunity to be married. (Doc. 29 at 1-3).

The amended complaint alleges that, in the spring or summer of 2004, the defendants suspected a corrections officer ("John Doe") of being a homosexual. They approached the plaintiff and offered to allow Jay to visit him, to allow them to be married,

and to remove a disciplinary from his file, in exchange for allowing Doe to perform oral sex on him (which would allow them to terminate Doe for violating an Alabama statute that prohibits such acts by corrections officers).  The plaintiff agreed, not out of any desire to commit the act but out of desire to see and marry Jay and out of fear of retribution should he refuse.  The plaintiff allowed Doe to perform oral sex on him on two occasions, the second one videotaped.  Ferrell kept his word, the plaintiff was allowed to see and marry Jay, and the disciplinary was removed from his file.  (Doc. 29 at 3-4).

The amended complaint asserts the following causes of action, all brought against the defendants in their official and individual capacities pursuant to 42 U.S.C. § 1983:

- Count One - imposition of cruel and unusual punishment (both defendants)
- Count Two - deprivation of constitutional right to marry (Ferrell)
- Count Three - denial of equal protection concerning marriage (Ferrell)
- Count Four - deprivation of visitation rights without due process (Ferrell)
- Count Five - denial of equal protection concerning visitation (Ferrell)

(Doc. 29 at 4-7).  The plaintiff seeks $4 million in damages under Count One and $500,000 under each of Counts Two through Five.  (*Id*.).[1]

The defendants argue that they are protected by various forms of immunity, that the plaintiff inadequately pleaded his claims, and that he cannot establish any constitutional violation.

## DETERMINATIONS OF UNCONTROVERTED FACT

The plaintiff's allegations in his amended complaint are significant, but he has

---

[1]Jay was a plaintiff with respect to Counts Two through Five, but following her death she was dismissed as a party pursuant to Federal Rule of Civil Procedure 25.  (Doc. 41).

-2-

produced virtually no evidence to support them.[2]  The defendants, in contrast, have produced substantial evidence which, given the plaintiff's failure to offer his own, stands as uncontroverted for purposes of deciding the pending motion.

By having a relationship with the plaintiff while employed by the prison, Jay violated prison policy and was subject to discipline.  (Defendants' Exhibit 9 at 2-3; Ferrell Affidavit at 2).  After Jay's relationship with the plaintiff was discovered on February 6, 2004, she was allowed to resign the same date and was barred from the prison in consequence of her conduct.  (*Id*.).  This was consistent with prison policy, which: prohibits visits by former employees without permission of the warden; authorizes the warden to suspend visitation privileges to any visitor engaged in misconduct; and authorizes suspension of visitation privileges for up to six months for cause, with the possibility of an extended suspension.  (Defendants' Exhibit 8 at 12-13).

At the time her employment ended, the plaintiff was married.  (Defendants' Exhibit 7).  Prison policy prohibited married individuals from visiting inmates of the opposite sex to whom they were neither married nor related.  (Ferrell Affidavit at 3).  Jay was therefore ineligible under the policy to visit the plaintiff until her divorce was final.  Her divorce was final on May 14, 2004.  (Defendants' Exhibit 7).

Between July 1 and July 8, 2004, the plaintiff approached Ferrell, advised him that Doe was having sex with inmates, and stated that he would "give" Doe to Ferrell in exchange for Ferrell placing Jay on the plaintiff's approved visitation list.  (Ferrell Affidavit at 3; Nunley Affidavit at 2).  Ferrell said he would consider the proposition. (Ferrell Affidavit at 3).

On or before July 8, 2004, the plaintiff repeated his offer in a meeting with Ferrell and Nunley.  (Ferrell Affidavit at 3-4; Nunley Affidavit at 2).   He advised that Doe was

---

[2]The plaintiff has presented over 40 pages of exhibits, including his five-page affidavit, but most of the material addresses matters irrelevant to the issues presented on motion for summary judgment.

working in the segregation unit and that he would need to be assigned to work in the segregation unit in order to catch Doe. (Ferrell Affidavit at 4). Ferrell and Nunley did not advise, encourage, suggest, direct or coerce the plaintiff to provide information or participate in a covert operation, and they did not instruct him as to any actions he should or should not take. (*Id*. at 4-5). They did advise the plaintiff that all actions by him must be of his own free will, and he responded that he understood and that his actions were of his own free will. (*Id*. at 4).

On or before July 16, 2004, Ferrell added Jay to the plaintiff's approved visitation list. (Ferrell Affidavit at 5; Plaintiff Affidavit at 5). This was done at the plaintiff's request, upon receipt of proof that Jay was divorced. (Ferrell Affidavit at 5).

Pursuant to prison policy, a formal, written request to marry from each person, on a simple, one-page form, is a prerequisite to obtaining permission. (Defendants' Exhibit 13 at 1; Defendants' Exhibit 10 at 2). Another prerequisite is written proof that the parties are legally able to marry. (*Id*.). Jay's divorce decree prohibited her from marrying anyone but her former husband for a period of 60 days. (Defendants' Exhibit 7). Jay was therefore not legally eligible to marry until July 14, 2004. (Doc. 58 at 7).

The plaintiff submitted his formal request to marry Jay on July 16, 2004. (Defendants' Exhibit 13 at 1). Jay's request was received the same date. (Defendants' Exhibit 12 at 3). Ferrell recalls no previous request to marry, formal or informal. (Ferrell Interrogatory Responses at 2). The request to marry was granted by Ferrell and the prison chaplain on or before August 6, 2004. (Defendants' Exhibit 14).

On July 26, 2004, video surveillance equipment was installed on 3 & 4 side of the segregation unit and the plaintiff was assigned as the night shift runner for the segregation unit. (Ferrell Affidavit at 5). During the early morning hours of July 30, 2004, the videotape caught Doe performing oral sex on the plaintiff. (*Id*.).

-4-

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

## I.  Heightened Pleading.

When claims are asserted under Section 1983 against persons in their individual capacities, in order to allow them to properly assert qualified immunity the plaintiff is held to a "heightened pleading" standard.  This requires the plaintiff to "allege with some specificity the facts which make out [his] claim.*"  GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).  In a single, unadorned sentence, the defendants assert that the amended complaint fails this standard.  (Doc. 54 at 12).  The Court's review of the amended complaint reveals significant detail about the plaintiff, his relationship to Jay, and the specific conduct of the defendants.  The defendants apparently found similar detail since, even though a failure to meet the heightened pleading standard exposes a complaint to dismissal under Rule 12(b)(6),[3] they filed no motion to dismiss.

---

[3]*E.g., GJR*, 132 F.3d at 1367.

Without some explanation as to how the amended complaint fails to satisfy the heightened pleading standard, which the defendants do not provide, summary judgment cannot be sustained on this ground.

## II.  Absolute Immunity.

The defendants invoke: (1) the Eleventh Amendment; (2) the Alabama Constitution; and (3) Ala. Code § 6-5-338.  (Doc. 54 at 20-25). The Court addresses each in turn.

### A.  Federal Constitution.

States are immune from suit in federal court by virtue of the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984).  Congress did not abrogate the states' sovereign immunity by enacting Section 1983.  *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Edelman v. Jordan*, 415 U.S. 651 (1974).

This constitutional immunity extends as well to entities having a sufficiently close connection to the state that a suit against the entity is effectively one against the state itself.  *Pennhurst*, 465 U.S. at 100.  The parties assume that the Alabama Department of Corrections partakes of this immunity, and the Court will indulge their assumption.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (Eleventh Amendment protection extends to Alabama Board of Corrections); *Leonard v. Department of Corrections*, 232 Fed. Appx. 892, 894 (11th Cir. 2007) (Eleventh Amendment protection extends to Florida Department of Corrections); *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (Eleventh Amendment protection extends to Georgia Department of Corrections).

A suit against a state officer in his official capacity is effectively one against the state and equally offends the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985).  Such an action may not proceed to the extent it seeks to recover monetary damages, including retroactive monetary damages incident to injunctive relief.

-6-

*Pennhurst*, 465 U.S. at 102-03.  However, such an action may proceed to the extent the plaintiff seeks appropriate prospective equitable relief.  *Id.*  Here, the only relief the plaintiff seeks is monetary damages.  (Doc. 29 at 5-7).  Accordingly, the plaintiff's claims against the defendants in their official capacities are due to be dismissed.

The defendants suggest that Eleventh Amendment immunity requires dismissal of the plaintiff's entire lawsuit.  (Doc. 52 at 3).  The Eleventh Amendment, however, does not preclude claims for damages against state officers in their individual capacities.  *E.g., Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1981 (2007) (construing *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974)); *Cross v. State of Alabama*, 49 F.3d 1490, 1503 (11th Cir. 1995); *Jackson v .Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  The plaintiff's individual-capacity claims therefore remain intact.

### B.  Alabama Constitution.

Article I, Section 14 of the Alabama Constitution provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity."  The plaintiff has brought only federal claims, and the defendants have not demonstrated that a state is empowered to declare itself immune from a suit brought in federal court to vindicate federal constitutional rights.[4]  Nor have they shown that they would partake of any such immunity.[5]  On the present record and argument, the defendants have not shown

---

[4]Twice in its briefing, the defendants concede that Section 14 provides immunity in federal court only to state-law claims.  (Doc. 54 at 21, 23).  Nevertheless, they elsewhere insist that Section 14 bestows immunity from the plaintiff's claims "whether they are brought pursuant to state or federal law."  (*Id*. at 22, 23).  The defendants' sole authority for this proposition in fact applied Section 14 only to the plaintiff's state-law claims, disposing of the federal claims on different grounds. *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996).  The same is true of every other Eleventh Circuit opinion reviewed by the Court.

[5]The defendants assert that all state employees necessarily share Section 14 immunity, (Doc. 54 at 22), but they cite only a case that holds just the opposite.

entitlement to summary judgment on this ground.

### C.  Alabama Statute.

"Every peace officer ... whose duties ... include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody" persons violating or charged with violating the criminal laws of the state, "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a).  The defendants invoke Section 6-5-338, (Doc. 54 at 25), but without any effort to show that they fall within its provisions or that it operates to immunize them from suit in federal court for violations of the United States Constitution.[6] The defendants' cursory treatment is inadequate to support summary judgment on this ground.

### III.  Qualified Immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

---

*DeStafney v. University of Alabama*, 413 So. 2d 391 (Ala. 1981).  They argue that all state officers and employees are protected by Section 14 "when the action is, in effect, one against the state," (Doc. 54 at 23), but they neither articulate nor employ any test for making that determination.  They argue that they share Section 14 immunity because they are "executive officers" of the state, (Doc. 54 at 22-23), but they cite only cases holding sheriffs to be executive officers and a constitutional provision that does not mention either wardens, investigators, or the Department of Corrections.

[6]They do not, for example, attempt to show that they are "peace officers" within the statute; that their duties include the enforcement of criminal laws or the investigation and reporting of violations (though this may well be true of Nunley); that they are empowered by law to execute warrants or arrest suspects; or that "immunity from tort liability" encompasses immunity for federal constitutional violations.

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendants' conduct "violated a clearly established statutory or constitutional right." *E.g., Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry may be broken down into two parts: (1) whether the facts alleged, if true, would establish a violation of the plaintiff's rights; and (2) whether these rights were clearly established at the time of the alleged deprivation. *E.g., id.*

### A. Discretionary Authority.

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. ... If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (emphasis added). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id.*

For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotes omitted). This definition encompasses two important points. First, discretionary *authority* does not require the performance of a discretionary *act*; even a ministerial act may be within the defendant's discretionary authority. *Jordan*

v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994); McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995).  Second, "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert International v. James, 157 F.3d at 1282 (internal quotes omitted).  For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners.  Id. (describing Jordan, 38 F.3d at 1566).

The quantum and quality of evidence necessary to meet the defendant's burden "vary in proportion to the degree of discretion inherent in the defendant's office." Barker v. Norman, 651 F.2d 1107, 1125 (5th Cir. 1981).  In some cases, the very nature of the job will make it obvious that the defendant acted within his discretionary authority.  See, e.g., Adams v. St. Lucie County Sheriff's Department, 962 F.2d 1563, 1568 (11th Cir. 1992) ("It is axiomatic that a law enforcement officer has the discretionary authority to pursue and apprehend a fleeing suspected offender."), vacated on other grounds, 982 F.2d 472 (11th Cir. 1993).

While "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice" to meet the defendant's burden of proof, Harbert International v. James, 157 F.3d at 1282 (internal quotes omitted), a defendant may in appropriate cases meet his burden based on affidavit.  E.g., Rich v. Dollar, 841 F.2d at 1564.  Here, defendant Nunley's affidavit reflects that he is an investigator, whose job encompasses investigating corrections officers suspected of sexual conduct with inmates, including through the use of informants.  (Nunley Affidavit at 1-2).  Defendant Ferrell's affidavit reflects that he is a prison warden, whose job includes supervision of staff and determinations on visitation and marriage.  (Ferrell Affidavit at 2-4, 5-6).  The plaintiff agrees that Ferrell acted within his discretionary authority.  (Doc. 58 at 3-6).  On this record, the Court concludes that the defendants have

-10-

met their initial burden.

## B.  Constitutional Violation.

The Court reviews each of the plaintiff's five constitutional claims separately.

### 1.  Cruel and unusual punishment.

The plaintiff asserts that the defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by coercing him into allowing a corrections officer to perform oral sex on him.  (Doc. 29 at 4-5).  The Eleventh Circuit recently "join[ed] other circuits recognizing that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment."  *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006).[7]

Despite the allegations of the complaint, however, the facts are uncontroverted that the defendants did *not* coerce the plaintiff.  On the contrary, the uncontroverted facts show that it was the plaintiff, not the defendants, who proposed "giving" Doe to the defendants; that it was the plaintiff, not the defendants, who proposed that Jay be granted visitation privileges in exchange; that it was the plaintiff, not the defendants, who proposed his transfer to the segregation unit so that he could "give" Doe to the defendants; that the defendants gave the plaintiff no advice, encouragement, suggestion or direction to become involved in a sex act or to take any other action; that the defendants insisted the plaintiff do nothing except of his own free will; and that the plaintiff affirmed

---

[7]There remains some question after *Boxer X* whether passively receiving oral sex satisfies the objective element of an Eighth Amendment claim.  *See id.* (forced masturbation in front of guards of the opposite sex did not satisfy the objective element); *Caffey v. Limestone County*, 243 Fed. Appx. 505, 509 (11th Cir. 2007) (male inmates' and visitors' brief observation of female plaintiff's genitals did not satisfy the objective element).  For the reasons set forth in text, it is unnecessary to determine whether the plaintiff's allegations could satisfy the objective element.

his involvement was the result of his own free will.[8]

"[W]e hold that ... welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997).[9]  Because it is

---

[8]The plaintiff has offered no evidence challenging any of these points, not even a denial in affidavit that the defendants' version as related in text is incorrect.  He states in his brief that he "stands on the facts alleged in his complaint," (Doc. 58 at 6), but in the face of a properly supported motion for summary judgment, as exists here, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading."  Fed. R. Civ. P. 56(e).

The plaintiff's only evidentiary contribution to the events leading to July 30, 2004 is that Ferrell "many times told [him] that [he] might never see Tina."  (Plaintiff Affidavit at 2).  While this might explain why the plaintiff was eager to offer his services to catch Doe, it does not create a fact issue as to whether he was coerced into doing so, especially given that prison policy required Jay's exclusion until and unless she furnished proof of divorce, which might well never occur.

The plaintiff argues that it is implausible he would have approached the defendants and offered to give them Doe, because he had helped prison officials before (including by foiling an escape attempt, rescuing a jailer, and solving a murder) and received nothing for his pains but being labeled a snitch and threatened by other prisoners.  (Doc. 58 at 11). While the plaintiff's affidavit supports the contention that he had helped prison officials on other occasions, it does not reflect that he experienced threats or any other negative repercussions; on the contrary, the plaintiff testified only that he received "no special favors" for his actions.  (Plaintiff Affidavit at 2-3).

The plaintiff spends much of his affidavit, and brief, refuting the defendants' evidence that he had engaged in multiple homosexual encounters prior to July 2004.  On motion for summary judgment the Court must accept the plaintiff's evidence that he has no homosexual history, but the absence of such a history does not create a fact issue as to the defendants' uncontroverted evidence that he was not coerced to engage in oral sex with Doe.

[9]*Accord Hall v. Beavin*, 1999 WL 1045694 at *1 (6th Cir. 1999) "[T]he evidence establishes that Hall voluntarily engaged in a sexual relationship with [a prison official]. Thus, Hall's Eighth Amendment claim is without merit.");  *Powell v. Carson*, 2008 WL 474132 at *2 (E.D. Mich. 2008) ("[A] consensual sexual relationship, although inappropriate, is not an Eighth Amendment violation per se."); *Stubbs v. Rose*, 2007 WL 776789 at *7 (E.D. Pa. 2007)  ("Consensual sex between two adults does not constitute cruel and unusual punishment simply because it occurs within the walls of a prison.");

-12-

uncontroverted that the plaintiff's participation was uncoerced and thus voluntary, he has no viable Eighth Amendment claim.

### 2.  Deprivation of right to marry.

The plaintiff asserts that Ferrell violated his First and Fourteenth Amendment right to marry by refusing his informal requests,[10] made before his formal request of July 16, 2004.  (Doc. 29 at 5-6; Doc. 58 at 7-8).[11]  It is uncontroverted that prison policy precluded Ferrell from granting an informal request; precluded him from granting an inmate's request unaccompanied by a request from his intended; and precluded him from granting a request to marry a person not legally eligible to marry.  The plaintiff makes no argument that these are illegitimate restrictions on a prisoner's right to marry, and they plainly are legitimate.

"The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration."  *Turner v. Safley*, 482 U.S. 78, 95 (1987).  Under *Turner*, "when a prison regulation impinges on inmates' constitutional rights [including the right to marry], the regulation is valid if it is reasonably related to legitimate penological interests."  *Id*. at 89.  In particular, "[n]o doubt legitimate security concerns may require

_____

*LeMaster v. Perdomo*, 2005 WL 2372150 at *2 (W.D. Mo. 2005);  *Phillips v. Bird*, 2003 WL 22953175 at *6 (D. Del. 2003 ); *Petty v. Venus Correctional Unit*, 2001 WL 360868 at *2 (N.D. Tex. 2001); *Fisher v. Goord*, 981 F. Supp. 140, 174 (W.D.N.Y. 1997) ("[C]onsensual sexual interactions between a correction officer and an inmate, although unquestionably inappropriate, and in this Court's view despicable, do not constitute cruel and unusual punishment under the Eighth Amendment.").

[10]There is no record evidence that any informal request was made.  Instead, the plaintiff argues that Ferrell's evidence that he recalls only one, formal request fails to exclude the possibility of informal requests.  (Doc. 58 at 7-8).  For present purposes, the Court will assume without deciding that the plaintiff is correct.

[11]The plaintiff does not argue that Ferrell denied his July 16, 2004 formal request, and it is uncontroverted that Ferrell did not deny, but granted, that request.

placing reasonable restrictions upon an inmate's right to marry, and may justify requiring approval of the superintendent." *Id.* at 97.

The plaintiff has offered, and the Court has discovered, no case holding or suggesting that the bland policy provisions noted above are unduly restrictive of a prisoner's right to marry or are not reasonably related to legitimate penal interests. On the contrary, the provisions are no more restrictive than those applicable to free-world citizens applying for marriage licenses in probate court and patently are reasonably related to a legitimate penological (and societal) interest in ensuring that only those desiring to wed and legally capable of doing so are approved.

### 3. Unequal protection of right to marry.

The plaintiff asserts that Ferrell violated the Equal Protection Clause by denying him the right to marry while similarly situated prisoners and civilians were afforded that right. (Doc. 29 at 6). The plaintiff makes no effort to support this claim in brief, and it plainly is insupportable.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on ... some ... constitutionally protected basis." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). The plaintiff, as a prisoner, is not similarly situated to any civilian. While he may be similarly situated to other prisoners, he has not alleged that any difference in treatment was made on a constitutionally protected basis. Such a failure is fatal in the face of a qualified immunity challenge. *GJR*, 132 F.3d at 1367.

That omission leaves the plaintiff to a "class of one" claim, in which the plaintiff is required to allege, rather than a constitutionally prohibited basis for the different treatment, the absence of a rational basis for the disparate treatment. *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007). A plaintiff who, like this one, fails to

make such an allegation necessarily fails to meet his burden under qualified immunity analysis.  *Id.*

### 4.  **Deprivation of right to visitation without due process.**

The plaintiff asserts that, by barring Jay from visiting the prison after her separation from employment, Ferrell violated prison policy and thereby deprived him of visitation rights without due process of law, in violation of the Fourteenth Amendment. (Doc. 29 at 6-7).  As a threshold matter, and as discussed in the next section, it is uncontroverted that Ferrell did *not* violate prison policy, which of itself dooms the plaintiff's claim.  In addition, the plaintiff had no interest implicating due process protection to begin with.

The Due Process Clause operates only when there is a life, liberty or property interest involved.  *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  When visitation privileges are at issue, only a liberty interest is potentially implicated.  *Id.*  Liberty interests can spring either directly from the Due Process Clause or from state law.  *Id.*  As a matter of law, "[t]he denial of prison access to a particular visitor ... is not independently protected by the Due Process Clause."  *Id.* at 461.

The Supreme Court has held that a liberty interest in visitation from a particular visitor can arise under state law only if the applicable prison regulations are "worded in such a way that an inmate could reasonably expect to enforce them against prison officials."  *Thompson*, 490 U.S. at 465.  Such a result requires, inter alia, "explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow."  *Id.* at 463 (internal quotes omitted).  In reviewing regulations closely paralleling those at issue here, the Court held that the necessary explicitly mandatory language was missing, such that the plaintiffs had no liberty interest in avoiding six-month suspensions of particular visitors' visitation privileges.  *Id.* at 458, 464.

-15-

The regulations at issue in *Thompson* allowed (but did not require) the exclusion of persons falling in listed categories, and the listed categories were non-exhaustive (so that discretion to exclude could — but need not — be exercised against persons not in the listed categories). 490 U.S. at 464-65. "The overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions." *Id*. at 465.

Just so here, the regulations provide that a visitor "may" (but need not) be excluded based on grounds that "may include, but are not limited," to those listed. (Defendant's Exhibit 8 at 11). Similarly, the warden "may" (but need not) suspend a visitor involved in "any misconduct," (*id*. at 12), a bottomlessly broad phrase. Finally, former employees may visit only with "authorization from the Warden," (*id*.), with no stated limitations on his discretion.

The Supreme Court has retreated from the analysis employed by *Thompson* and other cases, but the change is of no help to the plaintiff. Now the focus is on the nature of the loss, and liberty interests are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Courts have held that a loss of visitation privileges is one of the 'ordinary incidents' of prison confinement." *Henry v. Department of Corrections*, 131 Fed. Appx. 847, 849 (3rd Cir. 2005). In particular, a prisoner's "loss of visitation privileges [with his wife, for eighteen months] is within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship." *Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002).

Whether measured by *Thompson* or by *Sandin*, as a matter of law the plaintiff had no liberty interest in visits by Jay. Without a liberty interest, his due process claim necessarily fails.

**5. Unequal protection of right to visitation.**

The plaintiff asserts that Ferrell violated the Equal Protection Clause by denying visitation by Jay in violation of prison policy, while similarly situated prisoners and civilians were afforded visitation in compliance with the policy. (Doc. 29 at 7).

As set forth above, in order to show the violation of a constitutional right under qualified immunity analysis, a plaintiff alleging an equal protection violation must allege that the inequality of treatment was based on either a constitutionally protected basis or on no rational basis. The plaintiff has alleged neither. At any rate, it is uncontroverted that Ferrell's action in barring Jay was perfectly consistent with the policy, which required him to suspend her until she furnished proof of divorce and which authorized him to suspend her visitation privileges for up to six months for any misconduct, including having a relationship with an inmate in violation of employee rules.

**C. Clearly established law.**

Because the plaintiff has not alleged/cannot establish that the defendants violated any constitutional right, it is unnecessary to determine whether it was clearly established in 2004 that their conduct violated a constitutional right. *E.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001).

**CONCLUSION**

For the reasons set forth above, the defendants' motion for summary judgment is **granted**.[12]  Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 7th day of April, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[12]The defendants' motions to strike various affidavits, (Docs, 60-62), are **denied as moot**.